**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., | Case No. 20-cv-02421 |
| Plaintiff, | |
| v. | **Judge Robert W. Gettleman** |
| CHINABRANDMALL.COM, et al., | **Magistrate Judge Susan E. Cox** |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY TRANSFER OF THE DOMAIN NAMES, <u>A
TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY</u>**

Plaintiff Christian Dior Couture, S.A. ("Plaintiff" or "Dior") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary transfer of the Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .................................................... 1

II.    STATEMENT OF FACTS ............................................................................................... 2

    A.   Dior's Trademarks, Copyrights and Products ........................................................ 2

    B.   Defendants' Unlawful Activities .............................................................................. 3

III.    ARGUMENT ................................................................................................................. 4

    A.   Standard for Temporary Restraining Order and Preliminary Injunction .................... 5

    B.   Dior Will Likely Succeed on the Merits .................................................................. 6

        i.    Dior Will Likely Succeed on Its Trademark Infringement and Counterfeiting,
            False Designation of Origin, and UDTPA Claims. ............................................ 6

        ii.    Dior Is Likely to Succeed on Its Copyright Infringement Claim ...................... 8

    C.   There Is No Adequate Remedy at Law, and Dior Will Suffer Irreparable Harm in the
        Absence of Preliminary Relief ................................................................................ 9

    D.   The Balancing of Harms Tips in Dior's Favor, and the Public Interest Is Served by
        Entry of the Injunction .......................................................................................... 10

IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ............................................. 11

    A.   An Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of
        the CHRISTIAN DIOR Trademarks and Dior Copyrighted Designs Is Appropriate 11

    B.   Transferring the Defendant Domain Names to Dior's Control Is Appropriate ......... 12

    C.   Preventing the Fraudulent Transfer of Assets Is Appropriate ................................... 12

    D.   Dior Is Entitled to Expedited Discovery ................................................................. 14

V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................... 15

VI.    CONCLUSION ........................................................................................................... 15

## MEMORANDUM OF LAW

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Christian Dior Couture, S.A. ("Plaintiff" or "Dior") is requesting temporary *ex parte* relief based on an action for trademark infringement, counterfeiting, false designation of origin, and copyright infringement against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants").   As alleged in Dior's Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products, including clothing and fashion accessories, using infringing and counterfeit versions of Dior's federally registered trademarks, unauthorized copies of Dior's federally registered copyrighted designs, or both (collectively, the "Unauthorized Dior Products"), through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Amended Complaint (collectively, the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation, and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Dior Products.  The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them.  Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation.  Dior is forced to file these actions to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized Dior Products over the

---

[1] The e-commerce store urls are listed on Schedule A to the Amended Complaint under the Online Marketplaces and Domain Names.

Internet.  Defendants' ongoing unlawful activities should be restrained, and Dior respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.    STATEMENT OF FACTS

### A.  Dior's Trademarks, Copyrights and Products

Dior is a world-famous couturier engaged in the manufacture, sale and distribution of prestigious, high-quality, luxury merchandise, including a wide variety of clothing and fashion accessories, eyewear, leather goods, jewelry, watches, and other similar items sold throughout the United States (collectively, the "Dior Products"), all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CHRISTIAN

DIOR, DIOR, CD, and  (the "Cannage Design").  Declaration of Nicolas Lambert, (the "Lambert Declaration") at ¶ 3.  Dior uses its trademarks in connection with the marketing of its Dior Products, which are collectively referred to as the "CHRISTIAN DIOR Trademarks."  *Id*. True and correct copies of the United States registration certificates for the CHRISTIAN DIOR Trademarks are attached to the Lambert Declaration as Exhibit 1.  The registrations for the CHRISTIAN DIOR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.  *Id*. at ¶ 6.  The registrations for the CHRISTIAN DIOR Trademarks constitute *prima facie* evidence of their validity and of Dior's exclusive right to use the CHRISTIAN DIOR Trademarks pursuant to 15 U.S.C. § 1057(b).

Dior Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense.  *Id* at ¶ 7.  Dior has expended millions of dollars annually in advertising, promoting and marketing featuring the CHRISTIAN DIOR Trademarks.  *Id*.  Dior Products have also been the subject of extensive unsolicited publicity resulting from their high quality and popularity among high profile

celebrities who don Dior Products at red carpet events. *Id.* The CHRISTIAN DIOR Trademarks are distinctive when applied to the Dior Products, signifying to the purchaser that the products come from Dior and are manufactured to Dior's quality standards. *Id.* at ¶ 8. The CHRISTIAN DIOR Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. *Id.* As such, the goodwill associated with the CHRISTIAN DIOR Trademarks is of incalculable and inestimable value to Dior. *Id.*

Dior has also registered many of its designs with the United States Copyright Office (the "Dior Copyrighted Designs"). *Id.* at ¶ 10. The registrations include, but are not limited to, the registrations listed in paragraph 10 to the Declaration of Nicolas Lambert. *Id.* at ¶ 10. True and correct copies of the U.S. federal copyright registration certificates for the Dior Copyrighted Designs are attached to the Lambert Declaration as Exhibit 4. Among the exclusive rights granted to Dior under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Dior Copyrighted Design to the public.

### B. Defendants' Unlawful Activities

The success of the Dior brand has resulted in its significant counterfeiting. Lambert Declaration at ¶ 12. Consequently, Dior has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. *Id.* In recent years, Dior has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized Dior Products to consumers in this Judicial District and throughout the United States. *Id.* Dior's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Unauthorized Dior Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and that Defendants

3

are an interrelated group of counterfeiters. *Id.* at ¶ 19. If Defendants provide additional credible information regarding their identities, Dior will take appropriate steps to amend the Amended Complaint.

## III.    ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Dior's reputation and the goodwill symbolized by the CHRISTIAN DIOR Trademarks and the Dior Copyrighted Designs. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the CHRISTIAN DIOR Trademarks and the Dior Copyrighted Designs and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. See Declaration of Justin R. Gaudio ("Gaudio Declaration") at ¶¶ 5-7. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Dior respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. §

4

501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases through which Illinois residents can purchase Unauthorized Dior Products.  *See* Amended Complaint at ¶¶ 2, 19, 27, and 28.  *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendants offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required).  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Dior substantial injury in the State of Illinois.

**A.  Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical.  *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted).  A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted.  *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.  *Id.*  Finally, the

Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Dior Will Likely Succeed on the Merits

      i.    <u>Dior Will Likely Succeed on Its Trademark Infringement and Counterfeiting, and False Designation of Origin Claims.</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce, any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Dior's Lanham Act claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc*., No. 08 C 400, 2011 WL 1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, a plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

In this case, Dior's CHRISTIAN DIOR Trademarks are distinctive and are registered with the United States Patent and Trademark Office. Lambert Declaration at ¶¶ 5-6. The registrations for the CHRISTIAN DIOR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* The registrations for the

CHRISTIAN DIOR Trademarks constitute *prima facie* evidence of their validity and of Dior's exclusive right to use the CHRISTIAN DIOR Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Dior has not licensed or authorized Defendants to use any of the CHRISTIAN DIOR Trademarks, and none of the Defendants are authorized retailers of genuine Dior Products. *Id.* at ¶ 15. Thus, Dior satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the CHRISTIAN DIOR Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Dior has submitted extensive documentation showing that Defendants are selling Unauthorized Dior Products that look similar to genuine Dior Products and use infringing and counterfeit marks identical to the CHRISTIAN DIOR Trademarks. Both Dior and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Dior Products. Lambert Declaration at ¶¶ 9 and 13. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine

7

Dior Products from Unauthorized Dior Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Dior Products to purchase Unauthorized Dior Products instead. In that regard, Defendants advertise Unauthorized Dior Products using the DIOR Trademarks. Lambert Declaration at ¶¶ 13 and 16. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Dior products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Dior is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

ii.   Dior Is Likely to Succeed on Its Copyright Infringement Claim

The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Dior under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Dior Copyrighted Designs to the public. 17 U.S.C. § 106.

To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, Courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully

8

appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

With respect to the first element, Dior is the owner of several relevant federally registered copyrights. As to the second element, Defendants are willfully and deliberately reproducing the Dior Copyrighted Designs in their entirety, and are willfully and deliberately distributing copies of the Dior Copyrighted Designs to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Dior Copyrighted Designs. Such blatant copying infringes upon Dior's exclusive rights under 17 U.S.C. §§ 106. As such, Dior has proved it has a reasonable likelihood of success on the merits for its copyright infringement claim.

### C. There Is No Adequate Remedy at Law, and Dior Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir.2000)). Likewise, an injury to a copyright holder that is "not easily measurable in monetary terms, such as injury to reputation or goodwill, is often viewed as irreparable." *EnVerve, Inc. v. Unger Meat Co.,* 779 F. Supp. 2d 840, 844 (N.D. Ill. 2011). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.,* 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir.

9

1988).  As such, monetary damages are likely to be inadequate compensation for such harm.  *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the CHRISTIAN DIOR Trademarks has and continues to irreparably harm Dior through diminished goodwill and brand confidence, damage to Dior's reputation, loss of exclusivity, and loss of future sales.  Lambert Declaration at ¶¶ 23-27.  The extent of the harm to Dior's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief.  *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).  Dior will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).  Lambert Declaration at ¶ 28.

### D.  The Balancing of Harms Tips in Dior's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Dior has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Dior will suffer if relief is denied.  *Ty, Inc.*, 237 F.3d at 895.  As willful infringers, Defendants are entitled to little equitable consideration.  "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner."  *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994).  This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or

advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Dior has demonstrated, Defendants have been profiting from the sale of Unauthorized Dior Products. Thus, the balance of equities tips decisively in Dior's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Dior's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Dior seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. An Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the CHRISTIAN DIOR Trademarks and Dior Copyrighted Designs Is Appropriate

Dior requests a temporary injunction requiring the Defendants to immediately cease all use of the CHRISTIAN DIOR Trademarks, or substantially similar marks and/or copying and distribution of the Dior Copyrighted Designs, on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the CHRISTIAN DIOR Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the

CHRISTIAN DIOR Trademarks and/or copying and distribution of the Dior Copyrighted Designs. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Dior is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Unauthorized Dior Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (order granting *ex parte* Motion for Temporary Restraining Order).

**B. Transferring the Defendant Domain Names to Dior's Control Is Appropriate**

As part of the TRO, Dior also seeks temporary transfer of the Domain Names to Dior's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). As such, Dior respectfully requests that, as part of the TRO, the Court require the relevant registries and/or registrars for the Domain Names to transfer the Domain Names to Dior.

**C. Preventing the Fraudulent Transfer of Assets Is Appropriate**

Dior requests an *ex parte* restraint of Defendants' assets so that Dior's right to an equitable accounting of Defendants' profits from sales of Unauthorized Dior Products is not

impaired.[2]  Issuing an *ex parte* restraint will ensure Defendants' compliance.  If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.  Specifically, on information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Dior meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.  *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007).  In addition, Dior has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Dior is entitled, "subject to the principles of equity, to recover ... defendant's profits."  Similarly, Dior has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, and therefore Dior is entitled to recover "…any profits of the infringer that are attributable to the infringement."  17 U.S.C. § 504(b).  Dior's Amended Complaint seeks, among other relief, that Defendants account for and pay to Dior all profits realized by Defendants by reason of Defendants' unlawful acts.  Therefore, this Court has the inherent equitable authority to grant Dior's request for a prejudgment asset freeze to preserve relief sought by Dior.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes.  *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005).  The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking

---

[2] Dior has filed a Motion for Leave to File Under Seal certain documents for this same reason.

equitable relief. *Id.* (*citing Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Dior has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts. Accordingly, an asset restraint is proper.

### D. Dior Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Dior respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Dior's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Dior's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Dior respectfully requests that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Dior's evidence of counterfeiting, trademark infringement, and copyright infringement, Dior respectfully requests that this Court require Dior to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

Defendants' unlawful operations are irreparably harming Dior's business, its famous Dior brand, and consumers.  Without entry of the requested relief, Defendants' sale of Unauthorized Dior Products will continue to lead prospective purchasers and others to believe that Defendants' Unauthorized Dior Products have been manufactured by or emanate from Dior, when in fact, they have not.  Therefore, entry of an *ex parte* order is necessary.  In view of the foregoing and consistent with previous similar cases, Dior respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 23rd day of April 2020.    Respectfully submitted,

/s/ Justin R. Gaudio_____
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiff Christian Dior Couture, S.A.*

16