**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN DIOR COUTURE, S.A., | Case No. 20-cv-02421 |
| Plaintiff, | |
| v. | **Judge Robert W. Gettleman** |
| CHINABRANDMALL.COM, et al., | **Magistrate Judge Susan E. Cox** |
| Defendants. | |

**Declaration of Nicolas Lambert**

1

## DECLARATION OF NICOLAS LAMBERT

I, Nicolas Lambert, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I have been employed by LVMH Moët Hennessy Louis Vuitton SA ("LVMH") in Paris, France since 2016 and I am duly empowered to represent Christian Dior Couture, S.A. ("Dior"). In my capacity as LVMH's Head of Online Markets Protection, I am responsible, in part, for Dior's trademark and anti-counterfeiting efforts in connection with Internet related matters. I am knowledgeable about or have access to business records concerning all information referenced herein, including, but not limited to, Dior's trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage and anti-counterfeiting activities. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Dior is a world-famous couturier engaged in the business of styling and selling diverse articles of men's and women's apparel and fashion accessories. Dior is famous for its leadership, style, excellence, and quality in the field of fashion, and is widely recognized as one of the principal style innovators and leaders in the fashion field. Dior is engaged in the manufacture, sale and distribution of prestigious, high-quality, luxury merchandise, including a wide variety of clothing and fashion accessories, eyewear, leather goods, jewelry, watches, and other similar items sold throughout the United States (collectively, the "Dior Products"), all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CHRISTIAN DIOR, DIOR,

CD, and (the "Cannage Design"). Dior Products have become enormously popular and even iconic, driven by Dior's arduous quality standards and innovative designs. Among the purchasing public, genuine Dior Products are instantly recognizable as such. In the United States and around the world, the Dior brand has come to symbolize high quality, and Dior Products are among the most recognizable of their kind in the world.

4. Dior Products are distributed and sold to consumers through retailers throughout the United States in company-operated Dior boutiques and in high-quality department stores in Illinois such as Barneys, Bloomingdales, Nordstrom, Neiman Marcus, and Saks Fifth Avenue.

5. Dior incorporates a variety of distinctive marks in the design of its various Dior Products. As a result of its long-standing use, Dior owns common law trademark rights in its trademarks. Dior has also registered its trademarks with the United States Patent and Trademark Office. Dior Products typically include at least one of Dior's registered trademarks and/or copyrighted designs (the "Dior Copyrighted Designs"). Often several Dior marks are displayed on a single product. Dior uses its trademarks in connection with the marketing of its Dior Products, including the following marks which are collectively referred to as the "CHRISTIAN DIOR Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 543,994 | CHRISTIAN DIOR | June 19, 1951 | For: Handbags and pocketbooks in Class 018. |

| 580,207 | CHRISTIAN DIOR | September 22, 1953 | For: Jewelry for personal wear, not including watches-namely, trinkets, necklaces, bracelets, finger rings, earrings, brooches, and ornamental clips made in whole of, in part of, or plated with precious metals in class 014. |
|---|---|---|---|
| 954,404 | CHRISTIAN DIOR | March 6, 1973 | For: Eyeglass frames, sunglasses and eyeglass cases in Class 009. |
| 1,123,944 | CD | August 14, 1979 | For: Optical apparatus – namely, eyeglass frames in Class 009.<br><br>For: Jewelry and horological instruments – namely, women's costume jewelry, bracelets, and watches for men and women in Class 014.<br><br>For: Articles made from leather and imitations thereof, namely, luggage for men and women in Class 018.<br><br>For: Women's blouses, skirts, dresses, jackets, suits, coats; Men's suits, belts and sport jackets in Class 025. |
| 1,776,536 | | June 15, 1993 | For: Carry-on bags; change purses; clutch bags; clutch purses; golf umbrellas; handbags; luggage; passport cases, holders or wallets; pocketbooks; purses; shoulder bags; all-purpose sports bags; suitcases; tote bags; travel bags; and wallets in Class 018.<br><br>For: Clothing for use by men, women and children; namely, blouses; gloves; vests in Class 025. |

| | | | |
|---|---|---|---|
| 1,872,313 | | January 10, 1995 | For: Eyeglass frames and parts thereof; sunglasses in Class 009.<br><br>For: Rings in Class 014. |
| 1,923,564 | Dior | October 3, 1995 | For: Belt buckles of precious metals for clothing; brooches; charms; costume jewelry; ear clips; jewelry; jewelry lapel pins; ornamental pins; pendants; watch bands; watch chains; watch fobs; and watches in Class 014.<br><br>For: billfolds; business card cases; carry-on bags; change purses; clutch bags; clutch purses; coin purses; credit card cases; drawstring pouches; handbags; key cases; overnight bags; passport cases, holders or wallets; purses; shoulder bags; and wallets in Class 018. |
| 2,240,163 | | April 20, 1999 | For: clutch bags, change purses, pocketbooks, purses, wallets in class 018. |
| 3,561,323 | Dior | January 13, 2009 | For: optical apparatus and instruments, namely, spectacles, sunglasses, spectacle cases, and spectacle frames in Class 009. |
| 2,749,176 | Dior | August 12, 2003 | For: Athletic bags; attache cases; baby carriers worn on the body; backpacks; beach bags; beach umbrellas; billfolds; book bags; briefcase-type portfolios; briefcases; business card cases; carry-on bags; non-motorized collapsible luggage carts; change purses; clutch bags; clutch purses; coin purses; cosmetic cases sold |

| | | | |
|---|---|---|---|
| | | | empty; credit card cases; diaper bags; document cases; drawstring pouches; duffel bags; fanny packs; felt pouches; garment bags for travel; golf umbrellas; gym bags; handbags; hat boxes for travel; key cases; knapsacks; luggage; overnight bags; overnight cases; parasols; passport cases, holders and wallets; patio umbrellas; pocketbooks; purses; satchels; school bags; shoe bags for travel; leather shopping bags; mesh shopping bags; textile shopping bags; shoulder bags; all-purpose sports bags; suitcases; toiletry cases sold empty; tote bags; travel bags; trunks for traveling; umbrellas; valises; vanity cases sold empty; waist packs; wallets in Class 018.<br><br>For: Clothing for use by men, women and children; namely, anoraks; aprons; ascots; babushkas; bandannas; bathing suits; bathrobes; belts; blazers; blouses; blousons; bodysuits; boleros; boots; boxer shorts; brassieres; briefs; baby buntings; caftans; camisoles; capes; caps; cardigans; chemises; clogs; cloth diapers; fur coats; suit coats; top coats; corselets; culottes; dresses; earmuffs; galoshes; garter belts; girdles; gloves; nightgowns; halter tops; hats; headbands; hosiery; jackets; jeans; jogging suits; jumpers; jumpsuits; kerchiefs; kimonos; leggings; leotards; loungewear; mittens; moccasins; mufflers; neckerchiefs; neckties; neckwear; negligees; nightshirts; overalls; overcoats; overshoes; pajamas; panties; pants; pantsuits; pantyhose; parkas; pedal pushers; peignoirs; pinafores; playsuits; pocket squares; ponchos; pullovers; raincoats; sandals; scarves; shawls; shirts; shorts; undershirts; shoes; sweat shorts; skirts; ski suits; slacks; snowsuits; socks; sport coats; sport shirts; |

| | | | |
|---|---|---|---|
| | | | stockings; stoles; suits; suspenders; sweat pants; sweatshirts; sweaters; t-shirts; trousers; tuxedos; underpants; vests; vested suits; and warm-up suits in Class 025. |
| 5,173,476 | DIOR SO REAL | April 4, 2017 | For: Eyeglasses, sunglasses, goggles for sports; spectacle frames, spectacle cases; containers for contact lenses; protective cases, bags, satchels and covers for computers, tablets, mobile telephones and MP3 players in Class 009.<br><br>For: Jewelry; precious stones; precious metals and their alloys, jewelry bracelets, jewelry brooches, jewelry necklaces, jewelry chains, medals, pendants, earrings, rings, charms, tie pins; cuff links; key rings of precious metals; jewelry cases; boxes of precious metal; boxes, cases and presentation cases for timepieces and jewelry; timepieces, chronometric instruments, watches, watch bands in Class 014.<br><br>For: Leather and imitation leather; animal skins and furs; trunks and suitcases; wallets; coin purses; credit card holders; briefcases of leather or imitation leather; key cases of leather or imitation leather; garment bags for travel; all-purpose carrying bags, backpacks, handbags, traveling bags; vanity cases sold empty; clutch bags of leather; toiletry and make-up bags sold empty; boxes of leather; umbrellas in Class 018. |
| 5,505,434 | J'ADIOR | July 3, 2018 | For: Eyeglasses, sunglasses, goggles for sports; spectacle frames, spectacle cases; protective cases, bags, satchels and covers for computers, tablets, mobile telephones and MP3 players; cases for telephones, protective cases for telephones in Class 009. |

| | | | |
|---|---|---|---|
| | | | **For:** Jewelry, jewelry articles; precious and semi-precious stones; pearls; precious metals and their alloys; items of jewelry, namely, bracelets, brooches, necklaces, chains, medals, pendants, earrings, rings, and charms; tie pins; cuff links; key rings; jewelry cases; boxes of precious metals; presentation boxes and cases for jewelry and timepieces; timepieces; chronometric instruments; watches; watch bands; watch dials; chronographs in Class 014.<br><br>**For:** Leather and imitation leather; animal skins and fur pelts; trunks and suitcases; wallets; coin purses; credit card holders; briefcases of leather or imitation leather; attaché cases and document cases of leather and imitation leather; protective covers for clothing, namely, garment bags for travel; key cases of leather or imitation leather; all-purpose carrier bags; backpacks; handbags; traveling bags; vanity cases sold empty; clutch bags of leather; traveling sets being luggage of leather; toiletry and make-up bags sold empty; leather boxes not being jewelry boxes; umbrellas; shoulder belts of leather in Class 018.<br><br>**For:** Clothing, namely, layettes, bibs not of paper, bath robes, bathing suits, shorts, belts, suspenders, blouses, cardigans, trousers, overalls, combinations, shirts, t-shirts, skirts, polo shirts, pullovers, vests, dresses, coats, tailleurs, parkas, overcoats, blousons, jackets, underwear, furs being clothing, wedding dresses, gloves, mittens, scarves, stoles, sashes for wear, shawls, neckties, collars, caps, hats, visors, hosiery, men's suits, ponchos, raincoats, socks, tights, leggings, pajamas, |

| | | | |
|---|---|---|---|
| | | | tracksuits, cuffs, and bedroom slippers; footwear; beach, ski, and sports footwear; boots; ankle boots; sandals; pumps being footwear; esparto shoes and sandals; headbands; headwear; headgear being knitted caps; clothing for sports, namely, shorts and shirts; clothing for children, namely, hats, shorts, dresses, and shoes in Class 025. |
| 3,002,132 | | September 27, 2005 | For: Jewelry; jewelry chains; charms, medals; pins being jewelry in Class 014. |
| 2,790,589 | | December 9, 2003 | For: Optical apparatus and instruments, namely, spectacles, sunglasses in Class 009.<br><br>For: Precious metals in general and their alloys sold in bulk; precious metals and their alloys sold at retail; jewelry, charms, medals in Class 014.<br><br>For: Clothing for use by men, namely, blousons; boxer shorts; cardigans; neckties; neckwear; pants; pullovers; scarves; shirts; shorts; sweat shorts; sport shirts; sweatshirts; sweaters; t-shirts; trousers in Class 025. |

6.     The CHRISTIAN DIOR Trademarks have been used exclusively and continuously in the U.S. by Dior, and have never been abandoned.   The above registrations for the CHRISTIAN DIOR Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   True and correct copies of the above United States Registration Certificates are attached hereto as **Exhibit 1**.

7.    The CHRISTIAN DIOR Trademarks are exclusive to Dior, and are displayed extensively on Dior Products and in Dior's marketing and promotional materials.  Dior Products have long been among the most famous and popular of their kind in the world and have been extensively promoted and advertised at great expense.   In fact, Dior has expended millions of dollars annually in advertising, promoting and marketing featuring the CHRISTIAN DIOR Trademarks.  Dior Products have also been the subject of extensive unsolicited publicity resulting from their high quality and popularity among high profile celebrities who don Dior Products at red carpet events.  Representative photographs of celebrities adorned with Dior Products at red carpet events are attached hereto as **Exhibit 2**.  Because of these and other factors, the Dior name and the CHRISTIAN DIOR Trademarks have become famous throughout the United States.

8.    The CHRISTIAN DIOR Trademarks are distinctive when applied to the Dior Products, signifying to the purchaser that the products come from Dior and are manufactured to Dior's quality standards.  Whether Dior manufactures the products itself or licenses others to do so, Dior has ensured that products bearing its trademarks are manufactured to the highest quality standards.   The CHRISTIAN DIOR Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks.  As such, the goodwill associated with the CHRISTIAN DIOR Trademarks is of incalculable and inestimable value to Dior.

9.    Since at least as early as 1999, Dior has operated a website where it promotes Dior Products at dior.com.  Dior Products are featured and described on the website, and, since 2001, some of them are available for purchase.  The dior.com website features proprietary

content, images, and designs exclusive to Dior. Attached hereto as **Exhibit 3** is a true and correct copy of a portion of the dior.com website.

10. The Dior Copyrighted Designs are registered with the United States Copyright Office. The registrations include, but are not limited to: "BEE" (U.S. Copyright Registration No. VA 657-906), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 655-762), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-903), issued by the Register of Copyrights on June 17, 1994; "BEE" (U.S. Copyright Registration No. VA 657-904), issued by the Register of Copyrights on June 17, 1994; and "BEE" (U.S. Copyright Registration No. VA 657-905), issued by the Register of Copyrights on June 17, 1994. True and correct copies of the U.S. federal copyright registration certificates for the above-referenced Dior Copyrighted Designs are attached hereto as **Exhibit 4**.

11. Dior has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the CHRISTIAN DIOR Trademarks. As a result, products bearing the CHRISTIAN DIOR Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products from Dior. Dior is a multi-million-dollar operation, and Dior Products have become among the most popular of their kind in the world.

12. The success of the Dior brand has resulted in its significant counterfeiting. Consequently, Dior has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Dior has identified numerous fully interactive e-commerce stores, including

those[1] operating under the seller aliases identified in Schedule A to the Complaint (collectively, the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products, including clothing and fashion accessories, using infringing and counterfeit versions of Dior's federally registered CHRISTIAN DIOR Trademarks, unauthorized copies of the federally registered Dior Copyrighted Designs, or both (collectively, the "Unauthorized Dior Products") to consumers in this Judicial District and throughout the United States.

13.  I perform, supervise, and/or direct investigations related to Internet-based infringement of the CHRISTIAN DIOR Trademarks and the Dior Copyrighted Designs. Our investigation shows that Defendants are using the Seller Aliases to sell Unauthorized Dior Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Unauthorized Dior Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Unauthorized Dior Products were offered for sale, other features commonly associated with websites selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business with Dior and do not have the right or authority to use the CHRISTIAN DIOR Trademarks or copy the Dior Copyrighted Designs for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. Dior also conducted searches of the public WhoIs information regarding the Domain Names and identified the provided e-

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces and Domain Names.

mail addresses for each domain. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 5**, and WhoIs information for the Domain Names is attached as **Exhibit 6**.

14.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars and have sold Unauthorized Dior Products to residents of Illinois.

15.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Dior has not licensed or authorized Defendants to use any of the CHRISTIAN DIOR Trademarks or copy the Dior Copyrighted Designs, and none of the Defendants are authorized retailers of genuine Dior Products.

16.     Many Defendants also deceive unknowing consumers by using the CHRISTIAN DIOR Trademarks without authorization within the content, text, and/or meta tags of their online stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Dior Products. Other e-commerce stores operating under Seller Aliases omit using CHRISTIAN DIOR Trademarks in the item title to evade

enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Dior Products.

17.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based e-commerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their e-commerce operation.

18.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Dior Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

19.     Even though Defendants operate under multiple fictitious aliases, the e e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Dior Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to

one another, suggesting that many of the Unauthorized Dior Products may be manufactured by and come from a common source and that Defendants are interrelated.

20. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

21. Counterfeiters such as Defendants typically operate under multiple Seller Aliases and payment accounts so that they can continue operation in spite of Dior's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Dior.

22. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Dior Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Dior, have jointly and severally, knowingly and willfully used and continue to use the CHRISTIAN DIOR Trademarks and/or copy the Dior Copyrighted Designs in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Dior Products into the United States and Illinois over the Internet.

23. Monetary damages cannot adequately compensate Dior for ongoing infringement because monetary damages fail to address the loss of control of and damage to Dior's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to

ascertain due to the inability to calculate measurable damage in dollars and cents caused to Dior's reputation and goodwill by acts of infringement.

24. Dior's goodwill and reputation are irreparably damaged when CHRISTIAN DIOR Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Dior. Dior's goodwill and reputation are also irreparably damaged when the Dior Copyrighted Designs are reproduced, distributed, and displayed to the public without permission. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Dior's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

25. Dior is further irreparably harmed by the unauthorized use of the CHRISTIAN DIOR Trademarks and Dior Copyrighted Designs because counterfeiters take away Dior's ability to control the nature and quality of the Unauthorized Dior Products. Loss of quality control over goods offered for sale or sold under the CHRISTIAN DIOR Trademarks or that copy the Dior Copyrighted Designs and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

26. The use of the CHRISTIAN DIOR Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Dior is likely causing and will continue to cause consumer confusion, which weakens Dior's brand recognition and reputation. Consumers who mistakenly believe that the Unauthorized Dior Products he or she has purchased originated from Dior will come to believe that Dior offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Dior Products, resulting in a loss or undermining of

Dior's reputation and goodwill. Indeed, there is damage to Dior's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Unauthorized Dior Products worn by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Dior and the CHRISTIAN DIOR Trademarks. Such post-sale confusion results in damage to Dior's reputation and correlates to a loss of unquantifiable future sales.

27. Dior is further irreparably damaged due to a loss of exclusivity. Dior Products are meant to be exclusive. Dior's extensive marketing and innovative designs are aimed at growing and sustaining sales. The CHRISTIAN DIOR Trademarks and Dior Copyrighted Designs are distinctive and signify to consumers that the products originate from Dior and are manufactured to Dior's high quality standards. When counterfeiters use the CHRISTIAN DIOR Trademarks and/or copy the Dior Copyrighted Designs to offer for sale or sell goods without Dior's authorization, the exclusivity of Dior's products, as well as Dior's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

28. Dior will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 16th day of April 2020 at Paris, France.

_____

Nicolas Lambert