Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DECKERS OUTDOOR CORPORATION,    )
                                           )    Case No. 15-cv-3249

           Plaintiff,           )

                                         )    **Chief Judge Ruben Castillo**

      v.                       )

                                       )    **Magistrate Judge Daniel G. Martin**

CHEN XIAO, et al.,                  )

                                       )

           Defendants.        )

_____)

**SEALED TEMPORARY RESTRAINING ORDER**

THIS CAUSE being before the Court on Plaintiff Deckers Outdoor Corporation's ("Deckers") *Ex Parte* Motion for Entry of a Temporary Restraining Order, Including a Temporary Injunction, a Temporary Transfer of the Defendant Domain Names, a Temporary Asset Restraint, Expedited Discovery, and Service of Process by Email and/or Electronic Publication (the "Ex Parte Motion") against the defendants identified on Schedule "A" to the Amended Complaint and attached hereto (collectively, the "Defendants") and using at least the domain names identified in Schedule A (the "Defendant Domain Names") and the online marketplace accounts identified in Schedule A (the "Online Marketplace Accounts"), and this Court having heard the evidence before it hereby GRANTS Plaintiff's Ex Parte Motion in its entirety.

This Court further finds that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the UGG Trademarks (a list of which is included in the below chart).

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 3,050,925 | UGG | January 24, 2006 | For: Men's, women's and children's footwear, namely, boots, shoes, clogs, slippers; men's, women's and children's clothing, namely, coats, jackets; children's buntings in class 025. |
| 3,636,029 |  | June 9, 2009 | For: Leather bags in class 018. |
| 3,825,543 |  | July 27, 2010 | For: Coats; Jackets; Vests; Ponchos; Gloves; Mittens; Headwear; Wraps; Scarves; Sweaters in class 025. |
| 3,624,595 |  | May 19, 2009 | For: Footwear in class 025. |
| 4,234,396 | UGG | October 30, 2012 | For: footwear; clothing, namely, sweaters, coats, jackets, vests, ponchos, snow suits, scarves and gloves; headwear; children's buntings in class 025. |

This Court also finds that issuing this Order without notice pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure is appropriate because Plaintiff has presented specific facts in the Declaration of Graham Thatcher, paragraphs 25-26, and the Declaration of Justin R. Gaudio, paragraphs 5-9, and accompanying evidence clearly showing that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. Specifically, in the absence of an *ex parte* Order, Defendants could and likely would modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from accounts in U.S.-based financial institutions, including PayPal accounts, to offshore accounts. *Id.* As other courts have recognized, proceedings against those who

2

deliberately traffic in counterfeit merchandise are often useless if notice is given to the adverse party. Accordingly, this Court orders that:

1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily enjoined and restrained from:

   a. using Deckers' UGG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG branded product or any other product produced by Deckers, that is not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' UGG Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Deckers, or are sponsored by, approved by, or otherwise connected with Deckers;

   d. further infringing Deckers' UGG Trademarks and damaging Deckers' goodwill;

   e. otherwise competing unfairly with Deckers in any manner;

   f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered

for sale, and which bear any of Deckers' UGG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit UGG Products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Deckers' UGG Trademarks or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine UGG Product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademarks.

2.  Each Defendant, within fourteen (14) days after receiving notice of this Order, shall serve upon Deckers a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate (c) their financial accounts, including all PayPal accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through h, above.

3.  The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall, at Deckers' choosing:

a.  unlock and change the registrar of record for the Defendant Domain Names to a registrar of Deckers' selection until further ordered by this Court, and the domain name

registrars shall take any steps necessary to transfer the Defendant Domain Names to a registrar of Deckers' selection until further ordered by this Court; or

b. disable the Defendant Domain Names and make them inactive and untransferable until further ordered by this Court.

4. Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademarks, including any accounts associated with the Defendants listed on Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the UGG Trademarks; and

c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

5. Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as iOffer and Alibaba, advertisers,

Facebook, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers including PayPal, Alibaba, Western Union, third party processors and other payment processing service providers, shippers, and domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Deckers expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

a. The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

b. The nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, the Defendant Domain Names, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace Accounts and Defendant Domain Names;

c. Defendants' websites and/or any Online Marketplace Accounts;

d. The Defendant Domain Names or any domain name registered by Defendants; and

e. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, PayPal, Alibaba, Western Union, or other

6

merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. Western Union shall, within two (2) business days of receipt of this Order, block any Western Union money transfers and funds from being received by the Defendants identified in Schedule A until further ordered by this Court.

8. PayPal, Inc. ("PayPal") shall, within two (2) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites:

   a. Locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any PayPal accounts connected to the information listed in Schedule A hereto and the email addresses identified in Exhibits 22 and 23 to the Declaration of Graham Thatcher; and

   b. Restrain and enjoin any such accounts or funds that are China or Hong Kong based from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

9. Any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within two (2) business days of receipt of this Order:

   a. Locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any

accounts connected to the information listed in Schedule A hereto and the email addresses identified in Exhibits 22 and 23 to the Declaration of Graham Thatcher; and

b.  Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

10.  Deckers may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Amended Complaint, this Order and other relevant documents on a website to which the Defendant Domain Names which are transferred to Deckers' control will redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 22 and 23 to the Declaration of Graham Thatcher and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of Court is directed to issue a single original summons in the name of "Chen Xiao and all other Defendants identified in the Amended Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

11.  Plaintiff's Amended Complaint, Schedule A to the Amended Complaint, Exhibits 22 and 23 to the Declaration of Graham Thatcher, and this Order shall remain sealed until Defendants' financial accounts are restrained. Plaintiff shall file unsealed versions of the Amended Complaint, Schedule A to the Amended Complaint, Exhibits 22 and 23 to the Declaration of Graham Thatcher, and this Order using the CM/ECF system prior to the expiration of this Order.

12. Deckers shall deposit with the Court Ten Thousand Dollars ($10,000.00) as security, to be paid from Deckers or Deckers' counsel's Interest on Lawyers Trust Account (IOLTA), which amount was determined adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder.

13. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Deckers or on shorter notice as set by this Court.

14. This Temporary Restraining Order without notice is entered at _O_ A.M. on April _7_, 2015, and shall remain in effect for (14) fourteen days.

U.S. District Court Chief Judge Ruben Castillo

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GIANNI VERSACE, S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-05385 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A," | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendant Shop2827057's motion to dismiss [47] is denied. Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant shall file an answer by 3/13/2019. If Defendant Shop2827057 fails to answer by 3/13/2019, it will be defaulted. The Clerk of Court shall send a copy of this Order to Defendant Shop2827057 at the address indicated on its motion [47]. In addition, Plaintiff shall send Defendant Shop2827057 a copy of this Order electronically in the same manner as service was originally accomplished. Status hearing set for 2/27/2019 is stricken and reset for 3/28/2019 at 9:00 AM. See the accompanying Statement for details.

## STATEMENT

Plaintiff Gianni Versace, S.P.A. ("Versace") alleges that a number of online vendors (collectively, "Defendants"), identified primarily by their domain names and online marketplace accounts, sold counterfeit versions of Versace's merchandise to Illinois residents via commercial Internet stores. Due to the difficulty in identifying the correct physical addresses of Defendants, as well as Defendants' demonstrated ability to use electronic communications in contacting customers and service providers, Versace requested that the Court approve electronic service of the summons and complaint on Defendants. (*See* Pl.'s Memo in Supp. of Mot. for Electronic Service at 1–2, Dkt. No. 18.)

On August 16, 2018, this Court entered an order directing that Defendants be served by email and electronic publication pursuant to Federal Rule of Civil Procedure 4(f)(3), which allows the Court to authorize service of process by any means not prohibited by international agreement. (8/16/2018 Minute Order, Dkt. No. 25.) *See also* Fed. R. Civ. P. 4(f)(3). Versace subsequently served Defendants, including Defendant Shop2827057, by electronically publishing the Complaint and Summons on a website to which Defendants' Domain Names redirect and by sending the same to the email addresses identified as belonging to the infringing accounts. Shop2827057 now asserts that such service is improper, claiming that China's "opposition to Article 10 of the Hague Convention" prohibits Versace from directly serving Shop2827057 in that

manner. (Def. Mot. to Dismiss, Dkt. No. 47.) Shop2827057 further claims that Versace should contact the Chinese Ministry of Justice regarding attempted service. *Id*.

But the Hague Convention does not displace Rule 4(f)(3). *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). Indeed, the Hague Convention expressly does not apply "where the address of the person to be served with the document is not known." Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Art. 1, Nov. 15, 1965 ("Hague Convention"). That is precisely the case here: the eBay Internet store identified with Shop2827057 provided no physical address or identification of the owner. Since Versace did not and could not have known Shop2827057's true name or address, the Hague Convention does not apply and court-directed service was proper under Rule 4(f)(3). *See, e.g.*, *MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (Dkt. No. 42) (finding electronic service proper because defendant's address was unknown).

Nor must Versace attempt service by contacting the Chinese Ministry of Justice, as suggested by Shop2827057. The plain language of Rule 4 requires only that service be made as directed by the court and not prohibited by international agreement. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002) (noting no requirement that plaintiff attempt service by other means before petitioning the court for leave to serve under Rule 4(f)). Moreover, email service of an online business defendant is warranted when the defendant has no readily discoverable physical address, conducts business over the Internet, and uses email regularly in contacting customers. *Id*. at 1017–18 (finding email service to be appropriate and the most likely method of reaching foreign Internet business entity).

For the reasons explained above, Defendant Shop2827057's motion to dismiss is denied. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), the Court grants Shop2827057 fourteen days—*i.e.*, until March 13, 2019—to file an answer. If Shop2827057 fails to answer within that time, it will be found in default pursuant to Federal Rule of Civil Procedure 55(a).

Dated:  February 27, 2019

_____
Andrea R. Wood
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **LEVI STRAUSS & CO.**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 7824 |
| | ) | |
| **ZHEJIANG WEIDU GARMENT CO., LTD.** | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

yogee-mall, one of the many defendants in this action brought by Levi Strauss & Co. ("Levi Strauss") charging the pirating of its federally registered trademarks by a host of claimed infringers, has filed a motion (1) for its dismissal pursuant to Fed. R. Civ. P. 12(b)(5) and (2) to quash the substituted service on it that this Court had authorized based on submissions made by counsel for Levi Strauss. yogee-mall contends that such substituted service was unauthorized because Levi Strauss was obligated to pursue the method prescribed by the Hague Convention instead. Levi Strauss' counsel has just filed its response to the yogee-mall motion, and that response torpedoes the motion because it has been based on demonstrably false assertions on the part of yogee-mall.[1] What deep-sixes the yogee-mall motion is stated at the outset of the Hague Convention in its Article I:

---

[1] This Court should not be misunderstood as ascribing that falsity to the counsel who have appeared in this action on behalf of yogee-mall. It assumes that counsel advanced their client's contention in good faith reliance on the client's representations to them.

This Convention shall not apply where the address of the person to be served with the document is not known.

It is unnecessary for this Court to replicate the entire voluminous submission by Levi Strauss' counsel that is the product of the extensive investigative effort that it was forced to undertake because of the bogus assertions advanced by yogee-mall. Instead this Court attaches the current Levi Strauss response (Dkt. No. 48) as its own and attaches the text of that response (but none of its bulky exhibits) to this opinion.

In sum, yogee-mall's motion (Dkt. No. 45) is denied, and no further status hearing date is set in this action. This Court will await a motion by Levi Strauss for the entry of a final judgment order terminating this case when its counsel deems that appropriate.

_____
Milton I. Shadur
Senior United States District Judge

Date: November 17, 2016

- 2 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LEVI STRAUSS & CO.,                    )
                                       )    Case No. 16-cv-07824
                 Plaintiff,            )
                                       )    **Judge Milton I. Shadur**
        v.                             )
                                       )    **Magistrate Judge Maria Valdez**
ZHEJIANG WEIDU GARMENT CO., LTD.,      )
et al.,                                )
                                       )
                 Defendants.           )
_____  )

## PLAINTIFF'S RESPONSE TO DEFENDANT YOGEE MALL'S AMENDED MOTION TO DISMISS PURSUANT TO RULE 12(b)(5) AND MOTION TO QUASH SERVICE

Plaintiff Levi Strauss & Co. ("LS&Co.") hereby files its response to Defendant yogee-mall's Amended Motion to Dismiss Pursuant to Rule 12(b)(5) and Motion to Quash Service [45] (the "Motion").

## INTRODUCTION

Defendant yogee-mall ("Defendant") is a repeat counterfeiter[1] that offered for sale and sold unauthorized and unlicensed products using counterfeits of LS&Co.'s federally registered trademarks on at least an eBay storefront. Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." *Id.* Declaration of Allyson Martin (the "Martin Declaration") at ¶ 2, [45] at p. 4. Defendant's Motion is premised on the fact that it has supplied a known physical address, so the Hague Convention is "mandatory." [45] at p. 2. However, LS&Co.'s investigation of Defendant has revealed that Defendant's "physical address" is incomplete and fictitious.

---

[1] Defendant's counsel has informed LS&Co. that Defendant was sued in a different action by Plaintiff's counsel for trademark counterfeiting, but has refused to identify which case or the store name under which Defendant was operating. Martin Declaration at ¶ 6.

1

ATTACHMENT

Specifically, Defendant's Motion [45] alleges that Defendant has a "known" physical address at 1225 Room, Qian Jin Business Building No.1 Building, Tian He District, Guangzhou City, Guangdong Province, China." [45] at p. 2. However, LS&Co.'s China based investigator has verified that Defendant's represented "physical address" is an incomplete, fictitious address. This address lacks a street name and number. Room 1225 does not even exist in the Qian Jin Business Building that LS&Co. was able to locate based on Defendant's incomplete address. Declaration of Lily Fu (the "Fu Declaration") at ¶ 4. No business called "yogee-mall" has offices in the Qian Jin Business Building. *Id.* No business called "yogee-mall" is registered in the company register managed by the State Administration for Industry and Commerce, which is the Chinese equivalent of the "Yellow Pages." *Id.* at ¶ 5. No address is provided on its eBay Internet store. Martin Declaration at ¶ 7.

Defendant's address was not known when this case was filed and remains unknown, so the Hague Convention does not apply. As such, this Court's Order [24] permitting LS&Co. to complete service of process to Defendant via email pursuant to Federal Rule of Civil Procedure 4(f)(3) remains proper, and Defendant's Motion should be denied. In addition, this Court should award fees and costs to Plaintiff since Defendant's Motion was predicated on providing a false address to Plaintiff.

<u>**ARGUMENT**</u>

**A. The Hague Convention Does Not Apply Because Defendant's Address Is Not Known**

The United States and China are signatories to the Hague Service Convention. Martin Declaration at ¶ 2. However, Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." *Id.* The Hague Convention does not apply in this case because Defendant has no known physical

address. Indeed, LS&Co.'s investigation of Defendant has revealed that Defendant's "physical address" is incomplete and fake.

LS&Co. has investigated this address based on the information provided by Defendant's counsel: 1225 Room, Qian Jin Business Building No.1 Building, Tin He District, Guangzhou City, Guangdong Province, China.[2] First, based on a search, LS&Co.'s investigator found that the Qian Jin Business Building does exist in the Tian He District of Guangzhou City, Guangdong Province. Fu Declaration at ¶ 3. LS&Co.'s investigator determined that this building is located on No. 212 Che Po West Road, Tianhe District, Guangzhou City. *Id.* This indicates that the address provided by Defendant's counsel to LS&Co., and provided in Defendant's Motion [45] was incomplete, as it lacked a street name and number.



**Qian Jin Business Building, Fu Declaration at ¶ 4, Exhibit 1 to Fu Declaration**

This building hosts several companies, but none of the businesses are located in the 1225 Room. *Id.* at ¶ 3. LS&Co. further retained an investigator to conduct a field investigation of the Qian Jin Business Building. *Id.* at ¶ 4. Qian Jin Business Building has eight floors, and the

---

[2] This address was provided by Defendant's counsel (Martin Declaration at ¶ 5), as well as in Defendant's Motion [45] and in a declaration of Xiao Wei Yuan [41-1] under penalty of perjury.

house number of every room in the building begins with the number "8." *Id.* The Qian Jin Business Building hosts various companies. *Id.* LS&Co.'s field investigation included a comprehensive search of each of the eight floors of the building, and LS&Co.'s investigator did not locate 1225 Room in the building. *Id.* LS&Co.'s investigator further asked the estate management staff of the building about 1225 Room, and the estate management staff informed the investigator that there was not a 1225 Room in the building. *Id.* Finally, LS&Co.'s investigator also asked the staff members of the various companies in the Qian Jin Business Building, as well as the estate management staff of the building, about "yogee mall." *Id.* The companies' staff members had not heard of "yogee mall," and the estate management staff informed the investigator that there was no "yogee mall" in the building. *Id.*

Finally, LS&Co.'s investigator searched the company register managed by the State Administration for Industry and Commerce ("AIC") (the Chinese equivalents of the business "Yellow Pages"). *Id.* at ¶ 5. Neither "yogee mall" nor its Chinese language equivalent name have been registered with the AIC. *Id.* As such, LS&Co. is not able to obtain any information about Defendant's business, including its address. Defendant's address is not known, and the Hague Convention does not apply.

**B. Defendant Was Severed Pursuant to This Court's Properly Entered Fed. R. Civ. P. 4(f)(3) Order [24]**

   **a. The Hague Convention Is Not Mandatory**

Rule 4(f) does not require that a party attempt service of process through the Hague Convention as prescribed in Rule 4(f)(1) before petitioning the Court for alternative relief under Rule 4(f)(3). According to its plain language, Fed. R. Civ. P. 4(f)(3) requires that service must be (1) directed by the Court, and (2) not prohibited by international agreement. *Rio Props. v. Rio Int'l Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002). No other limitations are evident from the

text.  *Id*.  Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing.  Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means."  *Id*. at 1015.

At the November 2, 2016 hearing, opposing counsel argued that the Supreme Court had said that service by the Hague Convention is mandatory where it is applicable.  Transcript of the November 2, 2016 Motion Hearing [47] at p. 6, ll.19-22 (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988)).[3]  *Volkswagenwerk Aktiengesellschaft v. Schlunk* found that the Hague Convention did not apply when process was served on a foreign corporation by serving its domestic subsidiary within the United States.  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 698-708.  Importantly, *Volkswagenwerk* was decided in 1988, well before Fed. R. Civ. P. 4 was amended in 1993 to include subsection Fed. R. Civ. P. 4(f)(3) and before the commercial Internet even existed.  Martin Declaration at ¶ 3.  As such, the Supreme Court's language in *Volkswagenwerk Aktiengesellschaft v. Schlunk* is not precedential with respect to this Court's authority to order alternative service under Fed. R. Civ. P. 4(f)(3).  Such an interpretation is also contrary to congressional intent since the addition of Rule 4(f) was explicitly made in consideration of the Hague Convention.  *See* Exhibit 3 to Martin Declaration at p. 16.

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention

---

[3] Defendant did not cite *Volkswagenwerk Aktiengesellschaft v. Schlunk* in its Motion.  [45].

or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 U.S. Dist. LEXIS 71269, at *40 (N.D. Cal. July 1, 2011). Numerous courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including against China-based defendants. *See id. at *40-41; In re LDK Solar Securities Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299, at *5-7 (N.D. Cal. Apr. 17, 2007) (same).

### b. Email Service Not Prohibited by The Hague Convention

Courts have also agreed that service by email is not prohibited by the Hague Convention. *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) (holding that "[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007). Additionally, the law of the People's Republic of China does not appear to prohibit electronic service of process. Martin Declaration at ¶ 4. Accordingly, email service is appropriate under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention.

### c. Defendant Received Actual Notice of This Lawsuit

Finally, email service in the case comported with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendant of the pendency of this action and afford it an opportunity to present objections. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5. On August 16, 2016, pursuant to this Court's Order, LS&Co. served Defendant. [25]. Counsel has appeared on behalf of Defendant, and Defendant has had the opportunity to present objections.

### C.     This Court Should Award Attorney's Fees and Costs to LS&Co.

As established previously, the address provided by Defendant in a sworn declaration [41-1] is fictitious and incomplete.  Defendant is likely aware that if LS&Co. were to attempt service on Defendant using the Hague Convention and the address it provided, it would not be successful.  It would also be costly for LS&Co. and would take upwards of six months – all while Defendant was already properly served pursuant to this Court's Order [24], and Defendant received said service.

This Court has the inherent power "to sanction litigants and their attorneys for bad-faith conduct or willful disobedience of a court's orders."  *Intellect Wireless, Inc. v. Sharp Corp.*, 2015 U.S. Dist. LEXIS 44070, at *70 (N.D. Ill. Apr. 3, 2015) (internal citations and quotations omitted).  A court may sanction conduct under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008).

It is clear that Defendant is trying to avoid consequences for its actions by demanding LS&Co. attempt service under the Hague Convention to a fake address.  Accordingly, this Court should consider all appropriate remedies against Defendant, including awarding attorney's fees and costs to LS&Co., sanctions against Defendant, and any other actions that it deems appropriate to deter such conduct in the future.

## **CONCLUSION**

Accordingly, for the reasons stated herein, LS&Co. respectfully requests that this Court deny Defendant's Amended Motion to Dismiss Pursuant to Rule 12(b)(5) and Motion to Quash Service [45].

Dated this 16th day of November 2016.  Respectfully submitted,

        /s/ Justin R. Gaudio
        Kevin W. Guynn
        Amy C. Ziegler
        Justin R. Gaudio
        Jessica L. Bloodgood
        Greer, Burns & Crain, Ltd.
        300 South Wacker Drive, Suite 2500
        Chicago, Illinois 60606
        312.360.0080 / 312.360.9315 (facsimile)
        kguynn@gbc.law
        aziegler@gbc.law
        jgaudio@gbc.law
        jbloodgood@gbc.law

        *Counsel for Plaintiff Levi Strauss & Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2016, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Counsel for Plaintiff Levi Strauss & Co.*